# GEORGE HEIDER v. HERMANN SONS HALL ASSOCIATION.[1]

July 8, 1932.

Nos. 28,964, 28,965.

[1]Reported in 243 N. W. 699.

*Peter E. Kamuchey* and *Louis P. Sheahan,* for appellant.
*Rockstroh & Smith* and *Lyle Pettijohn,* for respondent.

OLSEN, J.

Plaintiff appeals from orders denying his motion for a new trial.

Plaintiff brought two suits to recover on two separate bonds sold and issued to him by the defendant. The suits were tried together before the court without a jury. We consider them here as one suit. The two bonds are identical in terms, except as to their dates and amounts.

The bonds, after reciting that defendant is a corporation organized under the laws of this state, provide that the defendant "acknowledges itself to owe and for value received hereby promises to pay to the order of George Heider the sum of    *    *    *    [$1,000 in one bond and $1,550 in the other] on the first day of April, 1930, at its offices in the City of St. Paul, Minnesota. This bond is one of a series of bonds of the said Hermann Sons Hall Association of like tenor and effect issued to provide funds for the general uses of the Association and the further development of its business, amounting in the aggregate to Fifty Thousand Dollars."

One bond bears date May 1, 1922; the other July 14, 1922. Payments were made for the bonds in full. Plaintiff demanded payment of the bonds at maturity on April 1, 1930, and payment was refused.

The answers of the defendant allege that under its articles of incorporation and by-laws the holders of its bonds were members of the corporation having the same rights and privileges as stockholders; that the corporation had no capital stock and the bondholders had the voting power and control thereof; that shortly prior to the maturity of its bonds a majority of the bondholders and officers of the corporation had certain meetings and made investigations as to the financial condition of the corporation, and as a result thereof adopted a resolution extending the payment of the bonds for ten years, until April 1, 1940. It is not claimed that

plaintiff took any part in the proceedings or resolution to extend the time of payment of the bonds, but it is alleged that he had due notice of these meetings and of all corporation meetings; that he attended and voted at several other meetings of the corporation; and that he had knowledge of or was charged with knowledge of the articles of incorporation and by-laws.

The court in its findings set out certain provisions of the articles of incorporation and by-laws as follows:

Section 2 of article I of the articles of incorporation states the general purposes of the corporation to be to provide, erect, own, lease, furnish, and manage any building, hall, or apartment, for the use of societies and incorporated or unincorporated organizations for social, moral, educational, benevolent, or fraternal purposes.

Section 3 gives the corporation power to acquire by purchase, gift, grant, or devise, and to hold, use, and convey, real and personal property, and to lease and mortgage same. It then provides:

"This corporation shall have the power and authority to issue, sell, and deliver its bonds or obligations for the payment of money in such denominations, and payable at such times, in such manner and under such rules and regulations as may be prescribed by its Board of Directors."

The bonds here in question were issued and sold under this provision.

Article II provides that any holder of one or more of its bonds "shall have all the rights of a stockholder of a corporation and one vote for every ten dollars paid in for such bonds so owned."

Article III provides that the corporation shall have no capital stock.

Article IX of the by-laws provides:

"Sec. 1. There shall be annually paid, after the annual meeting, out of the earnings of the preceding year, such sum to each member of the Association as shall constitute 7% interest per annum on the bond or bonds held by him, beginning with the first day of May, 1922.

"Sec. 2. All earnings of the Association on hand after the interest provided in Section 1 of this article has been paid, shall be forthwith transferred to a sinking fund which shall be profitably invested by the Finance Committee, with the approval of the Board of Directors, until such time as shall, by order of the Board of Directors, be used for the redemption of the outstanding bonds of the Association."

The court found that at the meeting of the corporation duly held on February 3, 1930, all members present unanimously adopted the resolution extending the time of payment of the bonds to April 1, 1940. The court further found that plaintiff was at all times since he became the owner of the two bonds a member of the corporation; that he had due notice of all corporation meetings and attended and voted at a number of such meetings. It further found that there was and is no provision in the articles of incorporation or by-laws authorizing any distribution of property among the members or shareholders other than as contained in sections 1 and 2 of article IX of the by-laws above quoted. It found that there was and could have been created no sinking fund, and that the seven per cent interest on the bonds had not been and could not be paid in full.

Based on these findings, the court by its conclusions of law directed that the actions be dismissed and that defendant recover its costs and disbursements.

The plaintiff moved at the opening of the trial to strike out all of defendant's answer except the general denial. During the trial he objected to any evidence by defendant in reference to the matters pleaded in the answer, as an attempt to vary the terms of written instruments, and on other grounds. At the close of the case he moved to strike out this evidence. The motions were denied and objections overruled. He thereafter moved for amended findings of fact and for conclusions of law in his favor, which motion was denied.

In its memoranda the court held that plaintiff's purchase of the bonds was not a loan to the corporation and that the payment of

these bonds was expressly confined to the sinking fund; in other words, that the bonds were not general obligations of the corporation, but charges only against its sinking fund, if and when there was such a fund.

■ These bonds are clear, unambiguous, and unconditional contracts and promises to pay to the holder therein named a stated sum of money on a definite date. Defendant's articles of incorporation expressly authorize it to issue and sell such bonds. We believe the terms of these bonds cannot be varied or changed by such extrinsic evidence as was here presented. Skelton v. Grimm, 156 Minn. 419, 195 N. W. 139; Merchants Nat. Bank v. Bryngelson, 160 Minn. 205, 199 N. W. 905; Brown v. Backer, 166 Minn. 50, 207 N. W. 20. The rule applies to all written contracts. In case of fraud or illegality the bonds might be invalidated; or in case of mutual mistake they might be reformed. The parties to a written instrument may no doubt also, by subsequent valid agreement founded on a valuable consideration, cancel or change the terms of a prior written agreement or extend the payment thereof; but in such case the one to be bound thereby must be a party to and have received a valuable consideration for the later agreement. We have nothing of that kind here.

The court in one of its findings stated that defendant was insolvent but not in liquidation. It is insolvent in the sense that it did not have money on hand on April 1, 1930, with which to pay its bonds. Without any finding, or, as far as called to our attention, any evidence, as to the value of its assets, we would not say that it is insolvent.

■ The defendant, as authorized by its articles of incorporation, sold its bonds to the public for the purpose of raising money wherewith to acquire property and carry on business. It borrowed the money for those purposes and gave to the lender what is in effect a promissory note for the repayment thereof. We think it was a loan.

■ Plaintiff is not seeking to have a distribution made of the property of this corporation, but is seeking to recover a debt owing

him by the corporation. An unconditional corporate bond is a debt of the corporation, and the holder thereof is a creditor. A stockholder may deal or contract with the corporation in the same manner as any other individual, and in so doing he acquires the same rights and incurs the same liabilities as any stranger would. 14 C. J. p. 868, § 1329.

It is very common for corporations to provide a sinking fund to be used in retiring its bonds. But if unconditional bonds are issued by it, the bondholder is entitled to payment of his bonds at maturity, irrespective of whether or not there is money in the sinking fund for the payment thereof. The corporation may if it sees fit make its bonds payable only out of the sinking fund by so providing in the bonds. Such bonds are not readily saleable, and such a provision is not common.

■ If we assume here that the provisions of sections 1 and 2 of article IX of defendant's by-laws, providing for a sinking fund, can be read into these bonds, we think they are insufficient to make the sinking fund the sole or only fund for the payment of the bonds. Section 2 provides for a sinking fund if and when the earnings exceed the interest requirements and presumably the running expenses of the corporation, and provides that this sinking fund could be used by the board of directors for the redemption of outstanding bonds at such time as they should order. There is nothing in this section making the sinking fund the sole fund or source out of which the bonds are to be paid, or making the payment of the bonds dependent on the sinking fund. We take it to be nothing more than the ordinary provision for accumulating a fund to assist the corporation to pay its bonds when due, and that it does not in any way relieve the corporation from its obligations to pay the bonds at maturity. If it had been intended to relieve the corporation and make the bonds a charge only on the sinking fund, it would have been a simple matter so to provide and to include such a provision in the bonds.

■ The resolution adopted by a majority of the bondholders to extend the maturity date of the bonds did not affect the rights of those not consenting thereto.

In the case of Booth v. Union Fibre Co. 142 Minn. 127, 171 N. W. 307, the corporation issued not bonds but preferred stock. The by-laws provided for the creation of a sinking fund to be used for the redemption of the preferred stock, and the certificates of preferred stock issued to the purchasers contained the provisions of the by-laws for the redemption of such stock out of the sinking fund. It was stock and not bonds that was sold, and the certificates carried on their face notice of the fund out of which the stock was to be redeemed.

Some of the assignments of error here are indefinite and defective. We find them sufficient to raise the questions argued and submitted. Under our liberal rule, amendments thereto would be allowed if necessary.

The orders appealed from are reversed.